Okay, Mr. Gross. Good afternoon, Your Honor. My name is Keith Gross. I represent Dave Wilson in this action. Let me begin with some of the background facts. Dave Wilson is... Talk to us about the mootness motion. Yes, Your Honor. Dave Wilson initially was elected to Houston Community College for a six-year term. His term has expired. After his term has expired, he ran again and did not get re-elected. So the causes of action and the basis for appeal before this court were declaratory, where Wilson sought declaratory relief, injunctive relief, and then legal relief in the amount of $10,000 related to mental anguish caused by the defendant's conduct. So the injunctive and declaratory relief claimed or moot, wouldn't you say? Yes, Your Honor. Thank you. Dave Wilson was elected to the board of Houston Community College to serve a six-year term. No dispute that Houston Community College is a governmental entity, subject to Section 1983. During his tenure, I'm sorry, let me restate that. Houston Community College is governed by its bylaws and its trustees are governed by its code of conduct. During his tenure at Houston Community College, Dave criticized other members of the board for their conduct. For example, he criticized the funding of a college campus located in the country of Qatar. He criticized the building or the attempted building of a campus that was outside Houston Community College's tax district. He criticized other board members during a board meeting where they allowed another trustee who wasn't present at the board meeting to vote via Skype when the bylaws clearly required that board member to be present. So the mechanisms in which he criticized board members was openly, he gave interviews to the media, and he initiated robocalls. Those were the mechanisms. He even filed two lawsuits to correct the behavior of other trustees at Houston Community College. He hired private detectives to follow some of the board members around. And he hired a private detective to follow another board member around under the guise that she misrepresented her residency where he believed that she was not eligible to hold office. So some of the code of ethics that exist that govern the trustees that are applicable here, and I won't read every one of them, but I'll read a couple of them, was the trustees have a duty and are encouraged to engage in open and honest discussions. They're required to respect the difference in opinions of other trustees. They're required to respect the board's collective decision-making process. Well, after, we're going to say several years of Wilson engaging and criticizing the various acts of other board members, on January 18, 2018, the HCC board members convened in a regularly scheduled session. The goal, one of the agenda items, was to go forward and execute a resolution of censure. Now this resolution of censure, what it would do, it would further define and clarify HCC's code of conduct, and then apply that and find that Wilson violated these codes of conduct through the exercise of his free speech. I don't need to go read the whole resolution of censure, but the very first paragraph kind of hits the nail on the head. This is resolution of censure, whereas Houston Community College Board of Trustees member, Mr. David Wilson, used public media to criticize other board members for taking positions differ from his own, including on April 19, 2017, robocall initiated by Mr. Wilson to the constituents of other board members, and two, on April 20, 2017, interview with a local radio station in which he identified board members who voted in favor of a transaction that he was opposed, and he accused those board members of not representing the people in their district. In doing so, Mr. Wilson has demonstrated a lack of respect for the board members . . . You actually read all that because it's all in the briefs and records, so why don't you . . . you're spending a lot of time on that. Why don't you move to whatever point you're making. Yes, Your Honor. The district court dismissed Mr. Wilson's case under Rule 12b-6 for failing to state a claim. Basically, the central issue of the case was that the injury Mr. Wilson complained of, accepting everything in his pleadings as true, did not rise to the level to trigger a First Amendment violation. The . . . Well, he can still state a cause of action and only be entitled to nominal damages, but that would still be a viable cause of action, wouldn't it? It would, Judge. And what happened . . . It seems to me that what you need to address is the fact that the community college basically says that Scott v. Flowers, which I wrote, so I'm particularly interested in it, is distinguishable on its facts. Will you address that directly? And I'm sure opposing counsel will want to do the same. Yes, Your Honor. Two cases, Scott v. Flowers and Jennings v. Willings, both of them are pretty much identical. Scott v. Flowers had to do with a J.P. Court judge who had complained that the county officials were summarily dismissing traffic tickets when they got to the county level. When he complained and criticized the county officials, the Commission for Judicial Conduct sent him a letter which constituted either was a public reprimand or a public censure. They go back and forth so many times I lose the distinguishment, but it was a public censure or reprimand that requested that he cease this conduct. Now, the things that are . . . Well, let me also, if you may, comment on Jennings v. Williams. Jennings v. Williams, or Willings, it was another judge who held a press conference, and in the press conference, after the press conference, various people complained to the Commission of Judicial Conduct, and the Commission of Judicial Conduct sent him a letter that censured or reprimanded him for his conduct. In both of these cases, the Fifth Circuit Court of Appeals summarily saw an elected official exercising a First Amendment right and being censured. The court in both of these cases really didn't dive into more of the dynamics of either one of those cases, but it summarily said it touched on one's First Amendment rights, and therefore, it is sufficient to trigger a First Amendment protection. In a deeper analysis, the standard of a First Amendment protection has been already articulated by this court in Keenan v. Tigeta, and the actual standard is whether a defendant's actions cause them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. That's the standard recognized by the Fifth Circuit going back at least as far as 2002, and when you look at that standard and you impose that standard and insert it in the case, the Commission for Judicial Conduct followed one of the canons and said the conduct of this judge violated this canon of judicial conduct. In doing so, it adjudicated his guilt finding a violation and then sent a letter of censure or reprimand saying, you're not allowed to do this anymore. Impliedly, in both Scott v. Flowers and the Genevieve case, the court found as a matter of law that that reprimand chills an ordinary person's right of free speech. It would deter him from continuing to engage in that activity, and it forces us to look at the very nature of what a public reprimand or a public censure is, and in Wilson's case, what it is, it amounts to a disciplinary action. It says you violated a rule. You violated a statute or some code of conduct, and it says stop this. So in its brief, as you know, because I'm sure you've looked at it carefully, the community college says that these cases are structurally distinguishable. In particular, they say a reprimand by a regulatory body such as the Texas Commission on Judicial Conduct goes beyond censure to risk punishment and removal from office. The Texas Commission on Judicial Conduct has the authority to order judges to undergo additional education, et cetera. They can be further distinguished because Trustee Wilson is a local legislator, not a judge. Judges are fundamentally different from legislators. Those are the arguments that you're well aware of, but would you respond to those? I'm trying to determine whether these two cases, Scott and Genevieve, and particularly Scott, are distinguishable structurally such that they're not applicable here, because if they are applicable, you've got an easy cause of action. If they're not, then you may not. The distinguishment that HCC raises is that the Commission for Judicial Conduct has the authority to strip the judges of their right to be a judge. Here, HCC, as a governing body, they had the right, and they did, in fact, sanction Wilson in just a different way. I don't think it's necessary that the court find that the Commission of Judicial Conduct, the fact that they had the authority to remove these people as a judge from engaging in this conduct, I don't think our law requires us to go that deep. I think the law requires us to go only deep enough to show that the conduct of the Commission of Judicial Conduct or the board for HCC can write a letter that rises to the level that it would deter Wilson or a person of ordinary firmness from continuing to engage in that activity. I think both the Judicial Commission for Judicial Conduct and the legislative body for HCC has that same power. Obviously, the board of HCC cannot remove him from office, but what they did is they sanctioned him. They took away his right to reimbursement of travel expenses, they impaired his right to community funds, and they said, you cannot hold an office within the board for the next year. All those things in the resolution of censure are characterized as a disciplinary action, it finds guilt, and it sanctioned him. It goes beyond just asking him to defer, to strip him of other privileges that other members have. Not only that, the censure said, if you keep doing this, we are going to discipline you more. So in the cases that I've cited, the court in this court has actually found why the decision is sufficient, and I'll tell you. And in Colson, the court held regarding the free speech, why the reprimand alone is sufficient. It said because imposing penalties on speech chills the exercise of First Amendment and thereby produces a result that the government cannot command directly. That's why the law is the way it is. Also in Keenan, this Fifth Circuit Court of Appeals also addressed the same issue regarding the level of injury sufficient to trigger First Amendment protection. This court wrote, the effect on freedom of speech may be small, but since there is no justification for harassing people for the exercise of their constitutional right, it need not be a great harm in order to be actionable. Where the district court erred, Justices, is in its opinion. It said Wilson did not suffer an injury to trigger a First Amendment cause of action because he actually did not do it. The resolution of censure did not stop him from engaging in free speech. It did not stop him from voting. It did not stop him from the exercise of his other duties. That goes way beyond the standard imposed by the Fifth Circuit. All right. Your initial time has expired, Mr. Gross. You've saved time for a vote. Good morning, Your Honors. In my time before the court, I will make two arguments. One, I'm going to argue that dismissal can be affirmed on the grounds of legislative immunity. And second, I'm going to argue that the trial court correctly dismissed this case for lack of standing because the appellant could not show an invasion of legally protected interest. Your Honor, the court below did not decide this case on the basis of legislative immunity, but I think it's important for this court to consider it. It was fully briefed below, but the court didn't address it. We know that legislative immunity extends to local legislators like public school boards. This court said as much in Minton v. St. Bernard Parish School District. And we know that censure is an action within the sphere of legislative activity. I would direct this court's attention to the case of Whitener v. McWaters, a Fourth Circuit case. Albeit not controlling, I think the reasoning on legislative immunity is particularly appropriate here. That court noted that Americans at the founding and after understood the powers to punish members as a legislative power inherent in even the humblest assembly of men. The court recognized that because citizens cannot sue legislative bodies or legislators, legislative bodies are left to police their own members to make orderly operations possible. And such efforts must be free of judicial interference. In Texas, Your Honors, trustees do not have the ability to remove their rogue trustees from office, no matter how much they may find their views abhorrent. Censure is about the only tool that they have to express disapproval of a trustee that will not comply with their rules of governance, their standards of ethics. The court in Whitener noted, absent truly exceptional circumstances, it would be strange to hold that such self-policing itself is actionable in court. And the court expressly rejected the First Amendment claim in that case, stating, while he was arguably disciplined for speech, it was legislative speech. What do you do with Hughes v. Tarrant County from this court in which we said that there was no legislative immunity where the particular action by the legislative body was directed at a particular individual, as it certainly was here? Your Honor, I think that it's important for this court to understand that its jurisprudence, its First Amendment jurisprudence, looks to context. We have context when we're dealing with employment speech and retaliation by the government against employees. We have a different context when the government retaliates against private citizens. But we have a unique context when we have members of a political body that take action against one of their own. Are you saying that Hughes is wrongly decided? I do, Your Honor, in that respect to the extent that it would suggest that it... We're bound by that decision, and so there's no legislative immunity here. You need to move on to something else. Well, Your Honor, I don't know that you're bound by it. I think that this case, you considered the cases of the Court of Appeals because they are different contexts. In those cases, they did not involve legislative action taken by peers in a political arena, and they did not involve electoral politics, as we have here. Your Honor, my first time to appear before this court was on a panel that you were on, Judge Smith, which was the Coulson case. I think the Coulson case is controlling here for another reason, that it also sets the standard, and this reaches the point that the trial court did find, is that there was no actionable claim, First Amendment claim. And that's because different than what was articulated by my opposing counsel, the standard is different when we're dealing with an elected official, and Coulson tells us so. Coulson, Your Honor, which I don't think is as compelling as in this case, involved government officials' efforts to retaliate against a council member outside of the public meeting. Unlike here, where we're just talking about a vote of censure, which is nothing more than a collective expression of speech from the majority condemning the speech of a member in the minority. And in Coulson— It is that, but it also took away travel expenses and the right to be an officer, and it threatened future action if his speech was repeated. Yes, Your Honor, it did, but the right to access those funds, particularly the community access funds, you'll see, was already subject to the discretion of the board president, because the bylaw said that the use of any funds had to be in support of the board's purposes. What that means, Your Honor, is the majority gets to determine what those expenditures are appropriate for, and so Mr. Wilson did not have any individualized entitlement to any of those funds. In effect, those funds further the policy will of the majority of the board, Your Honor. He was censured for criticizing what the majority did. I mean, here he is sitting on the board, and so he disagrees with what the board action the majority takes. You're saying that he can't criticize what they do? That's not a matter of public concern? I'm sorry, Your Honor, absolutely not. I'm not saying that. He's free to criticize publicly. He's free to criticize in a board meeting. He's free to criticize through the media. There's no evidence that he was unable to do any of those things, and I think the courts that have looked at this issue in this context look to the Supreme Court's decision in the Bond case, Bond v. Floyd, and they said where the line gets crossed is when you prevent the elected official from engaging in the responsibilities that they were elected for. In that case, you may remember the U.S. Supreme Court struck down the Georgia Assembly's refusal to even seat an elected Assembly member because they didn't believe that he would comply with the oath of office because he was public. This would well be six, though, wouldn't it? We don't know whether it would have prevented the board members from doing their job. Well, in this case, we know that, as the trial court found, there was nothing to prohibit him from doing so, and since the court found that he couldn't exercise his speech, he was free to do that, and, you know, the particular speech at issue in this case was in the public arena. It all occurred in a public board meeting, and so I would suggest to the court that what Mr. Wilson is attempting to do ... But don't you imagine that it would hinder his ability to do his job if his travel expenses that he might otherwise have received were taken away or that his right to become an chairman or vice chairman or some other officer of the board were taken away? Those directly affect his ability to engage in his elected duties. You know, consistent with this court's decision in Colson, Your Honor, where the court said that the type of campaign was a type of a sort of steady stream of false accusations and vehement criticism that any politician must be expected to endure. A politician who is having to respond to collective speech disapproving of his viewpoint, that is something a politician is expected to endure. And in Colson, what the court said, the chilling of the speech is not enough. There's got to be more in terms of the deprivation of an interest. So this court in Colson found that retaliatory criticisms, investigations, and false allegations, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence. And I think that's what the trial court essentially found here, that even if all the things that Mr. Wilson said were true, they didn't rise to actionable retaliation in the context of a legislative body dealing with its peers. I thought that the court, the Ninth Circuit in Blair v. Bethel School District, really got this right in this context. In that court, it said Plaintiff's case was not a typical First Amendment case. What's different here is the adverse action Plaintiff is challenging was taken by peers in the political arena. That context matters. The court went on to say more is fair in electoral politics than in other contexts. It is common for political bodies to have internal leadership struggles and for members of those bodies to be openly partisan in voting for and against one another for leadership positions. And I think that directly answers your question, Judge Smith, about what about the fact that he was not eligible to obtain a seat. Well, obtaining a board seat is the decision of the board acting in an expressly political manner because they are choosing their leaders who adhere to the majority's views about the direction of the institution. It is inherently a policy choice. Mr. Wilson wasn't removed from any officer position. He was just simply told that the majority wouldn't support his being an officer because their views didn't align with his. In Blair, the court went on to say that removal from an officer position was a minor indignity and de minimis deprivation of benefits and privileges on account of one's speech do not give rise to a First Amendment claim. So similarly, Mr. Wilson's mere loss of the ability to be considered by his peers as a board officer wouldn't rise to the level of a constitutional deprivation. I want to revisit the Widener v. McWater's decision because I think that this language is helpful. It says not all retaliation violates the First Amendment because the right to free speech does not guard against any form of political politics. If this court were to entertain Mr. Wilson's position and find that there is a viable First Amendment claim, I suggest to you that that's an open invitation for courts to play referee in political disputes among political bodies. For example, you heard about Trustee Tormez and the allegation that Trustee Tormez didn't live in her district and that Mr. Wilson, you know, tried to film her to try to prove his case. You could face a situation where the majority aligns with Mr. Wilson in that regard and then Ms. Tormez brings her own First Amendment retaliation claim because of some public expression made by the board. I don't think it's beyond dispute that had any individual trustee made the same condemning statements regarding Mr. Wilson that there wouldn't be a claim here. The only argument that I've heard for why, when the board votes collectively, that it now morphs into a viable First Amendment claim is because there's something magical about the fact that the expression is collective rather than the expression of a singular trustee. I don't think that matters and I don't think that opposing counsel can point you to any case that says that the free speech rights of the collective are any less than the free speech rights of the individual trustee. The upshot of opposing counsel's position, Your Honor— It seems to me that what you've told us in the last three or four minutes is basically that Scott v. Flowers is wrongly decided and needs to be reconsidered or overruled. I don't think they're wrongly decided, Your Honor. I think that they're in completely different contexts because they don't involve the need for having censorship as a tool for a political body to police its own. And in those cases, the risk of the punitive nature of the government action was, as stated in our brief, that the commission could take actions that jeopardize the livelihood of these judges' ability to practice. They could sanction them and reprimand them in ways that further action could even lead to a recommendation from their removal from office. A censure is really no more than what it says it is. It's simply the majority's expression of a condemnation against another individual. That power, by the way, that legislative tool afforded to legislative bodies comes in our common law from England. It was embodied in the Speech and Debate Clause. There is authority that upholds it in separation of power cases involving the executive and the legislative branch, but it also extends to local legislative bodies. And so the upshot of Mr. Wilson's position is that if the majority criticizes him through censure, they've gone too far. Individual trustees can criticize, but if they do it collectively, they go too far. The punishment that he is really concerned about is simply that the trustees banded together and spoke collectively, but their speech through censure is protected itself. And so what you really have in this case is not simply the retaliation, an act of retaliation in the form of a punishment for an expression of speech like you might find in an employment context or you might find in a case involving a private citizen. You're having the punishment be speech, speech in response to speech. And that's why I think legislative immunity is appropriate in this particular context involving this type of legislative body, because otherwise the court will find itself refereeing the speech, the back-and-forth speech between legislative members, and I think that there's plenty of authority that suggests that that goes too far, and the trial court was right to stay his hand for that reason, and because he simply said that this type of speech is not actionable because it didn't prevent Trustee Wilson from effectively serving as a trustee. Again, he had the ability to respond in public to the censure in public board meetings. It occurred in a public meeting. He doesn't claim otherwise. He had the ability to walk out of the board meeting and convene a press conference, as he was known to do, and blast the board because he thought that the resolution of censure was unfair to him, but it doesn't change the fact that it's not an actionable speech in this court's jurisprudence, and I think, again, what is more clear is the Colson case. The Colson case says, different than what opposing counsel tells you, is the standard is higher for an elected official. Colson recognized that in the Colson case, the court recognized that the official in that case's speech may have been chilled by virtue of the threatened investigations, the circulation of petitions against her, threatened criminal actions. They recognized all that may chill her speech, but they said that is not enough. Why? Because she still was able to function as a counselwoman, to attend board meetings. This court's standard in Colson, the trial court was correct. Plaintiff hasn't made a case out that will meet that standard in showing that cognizable harm. In their brief, he talks a lot about the fact that they've alleged mental anguish damages. Well, the allegation for a remedy, in and of itself, doesn't establish the constitutional harm. So, you know, in Whitener, the court said, while the plaintiff in that case was arguably disciplined for speech, it was legislative speech, which is protected from executive or, in the United States, judicial interference, but not from the legislative body's judgment. As legislative speech in voting is protected by absolute immunity, the exercise of self-disciplinary power is likewise protected. I'm here to suggest to this court, again, you know, when I argued Colson, Your Honor, just some 20 years ago, since that time, I've had the opportunity to sit with boards and counsel them. I did not counsel the board with respect to this resolution of censure, but I have told them that even if they have the most maverick of trustee, that their limited rights to address a maverick trustee who doesn't comply with bylaws, doesn't engage with them in appropriate discussion, is limited to the right for them to censure their conduct, to express to the public that they collectively don't think that they're working well with them. They could have censured him for the non-speech activity that he did, couldn't they? I mean, they didn't have to go so far as to say, look, you need to quit talking. You need to stop your robocalls and stop criticizing the board. Well, Your Honor, I think that because there's no punishment that comes with that, that's simply they're expressing their opinions that we want you to stop criticizing us, because we think your criticisms are unfair. So that's simply a form of expressive speech and response. Have you got any cases, though, that recognize government speech that is a defense? Yes, Your Honor, plenty. I think all the cases that we've cited suggest that that is considered legislative speech. Well, you've got a legislative body, but I'm not hearing how you get around the Hughes case. I'm sorry, the what case? I'm not hearing how you get around the Hughes case to make this board a legislative body in this particular, with respect to how they centered the attention on the plaintiff. Well, I think the distinction is, Your Honor, and I see that I'm out of time. May I answer your question? I think that the distinction is, is when they're acting in the vote of censure, they're expressing policy in that censure. They're trying to gain adherence to their bylaws. And so in that function, they are engaged in a legislative activity that this court should not interfere with. By focusing on the individual, they're setting policy? Well, Your Honor, sometimes focusing on the individual is focusing on general politics because in enforcing their generalized standards of conduct against an individual, they are publicly expressing their adherence to their policy standards for how they govern themselves. And so in that sense, while I certainly understand that their expression in support of their bylaws was directed as an individual because the individual's actions occasioned the need to do that, it still is an expression of their general support of their own governance policies. All right. Thank you, Mr. Morris. Thank you, Your Honor. Rose for the vote. Thank you. I'd like to address with regards to HCC's argument of free speech, the government's entitled to it, the legislators are entitled to it, and everybody's entitled to it so there can't be any harm. That was his position. The difference is, when an HCC trustee acts as an individual in his individual capacity, he has virtually no power. He speaks as an ordinary citizen, not cloaked with all the authority vested in him by the bylaws of HCC. So when he offers up his opinions and his criticisms of Wilson's conduct, he does so cloaked with First Amendment protection. But when all the members of the HCC Board of Trustees, they gather together and they could probably express an opinion and say, I don't like Dave Wilson, he's a this, that, or the other thing. But they didn't do that. What the Board did as a governmental entity was interpret one of its codes of conduct. It said, Dave Wilson violated a code of conduct, he is guilty of violating it, and then they sought to enforce it. That rises above, way beyond the level of let's everybody exercise our free speech. Dave Wilson sued challenging the code of conduct. He said these codes of conduct, as it was applied by HCC in this resolution of censure, made these rules of conduct unconstitutional because I'm not free or I am not respecting the decisions of my fellow board members if I openly criticize him. He said this code is unconstitutional because it's repugnant to the First Amendment. That goes way beyond HCC's contention. We agree that someone could offer their criticisms. Let me ask you this. Isn't there a case, though, where a board who has a job of running the school system or whatever they're running, they've got a member that just goes off the railings, and he makes all kind of unjustified criticism to the extent that they can't do their job. What remedy does that board have? If the criticisms are false, then I believe that the board would have a remedy. If the criticisms are true, then it may just be the exercise of his First Amendment right. If his criticisms, if it's purely speech and not conduct, then it's protected. But as you know, freedom of speech has its limitations. Freedom of speech, if it's just false allegations that arises to defamatory conduct, the First Amendment has its limitations. Here, we didn't sue the HCC's for their legislative actions. HCC's bylaws and code of conduct, as interpreted and applied to Dave Wilson, are repugnant to the First Amendment and violate his rights. Monell v. Department of Education hauls municipalities liable for their unconstitutional acts, designating and holding that HCC's code of conduct, as HCC's board interpreted, is repugnant to the Constitution. It does not rise or is not limited to freedom of speech. It goes way beyond that. They adopted a rule, they enforced a rule, and the rule is repugnant, and as applied to Mr. Wilson, he suffered a constitutional injury. To that extent, HCC's position that its legislative trustees are cloaked with legislative immunity doesn't apply. If it would apply like HCC represents, then no one could sue and bring suit against a municipality for an unconstitutional ordinance or code or regulation. What's the relief you want from this panel? We've moved past the mootness on the injunction. You want us to hold it. He has an actual claim and then go back to the district court and try to prove what, if anything— I'd ask this court to reverse and remand, send it back to the court saying that the injury suffered by Mr. Wilson was significant to trigger a First Amendment protection, and then for the trial court to determine whether he suffered damages attributable to mental anguish in the amount of—I think we asked for $10,000. That's the relief we're asking for, Judge. Thank you very much. All right, thank you, Mr. Gross. Your case and all of today's cases are under submission. Court is in recess until 9 p.m.